vs. Rivera. Ms. Pisetsky. Good morning your honors. May it please the court, counsel. My name is Gal Pisetsky. I'm here on behalf of Juan Duenas. He is defendant number two in this case. It is basically the same issue for both defendants on a motion to suppress and I will argue for both defendants in this case. The initial, there are two issues here. The first issue is the consent once removed. The second issue is the inevitable discovery. And your honors, we believe that the judge in the district court erred when he denied our motion to suppress. Consent once removed first. There are three elements. We don't deny that the first two elements were met. That the CI in this case, the confidential informant, entered my client's garage by invitation and the second element that he established that there was probable cause because cocaine was shown to him to the CI by Mr. William Rivera. However, we are contending that the third element, which is immediately summoned help from other officers, was not met by the government. One consensual entry does not give law enforcement authority to enter an approach of the case law in this district. The third element says immediately summon help. That is not coincidental. Help means aid to the police officer or to the CI that is on the premise or exiting the premise contemporaneous to the entry of law enforcement to assist or aid. It is a question of immediacy and law enforcement entry must be contemporaneous with the CI's exit for the purpose of help. And in Fourth Amendment terms, the passage of more than a few moments in this situation when we're talking about immediately summoned help is very significant. In this situation, in our case, the CI definitely left the garage. He was not there by the doorstep. He left with one of the suspects, right? Magana? Correct. And the reason why I submit that the reason why Magana left is before they left the garage and the CI said, I'm going to get the cash now, they did not really know how and where he's going to get the cash from. Yes, he did know that it was in a little trap. But if you look at the transcripts that the judge had and we had the videotape, he didn't indicate where is the trap. We know Magana came with the CS or the CI to the meeting, but there's no conversation at all with the Magana. Where is the where is the money? So Magana leaves with the CI's because he came with him and he doesn't know where the CS is going to get the money. And the CS basically what he tells him is, you can't come with me right now to that effect. And he almost shoes him away from the car and he starts moving the car. I know the government said that I misrepresented it, but no, when you start driving, that means you move the car. For all that Magana knew and my client knew and Mr. Rivera knew is that the CS was driving to get the drugs from somewhere. He definitely left the garage. In this situation, my client was suspicious of the activity. It is not analogous to the government relied, which was a district court opinion. I think it's a lot more analogous to USA v. Herrera Corral, which by the way, I believe was affirmed on the issue of consent once removed by this court in USA v. Robles or Tiago, which was the same case. On the issue of inevitable discovery, I don't believe, your honors, with all due respect, that inevitable situation here, the government had, and there was a USA on the phone with the agents specifically instructing them on how to proceed. And the instructions were, we are going to do what is called, we are going to rely on the consent once removed. So the notion that they are going to use inevitably a search warrant is a fake, unrealistic notion and that the agents that testified was simply testifying to self-serving speculation by himself. Counsel, if I could, with indulgence of my colleagues, I'd like to just ask you back on the issue of consent once removed. It seems to me, as I understand these cases, that in essence time and distance are pretty critical here, at least under the case law. And we've got pretty detailed findings by the district judge indicating that the unidentified confidential informant sent that signal to agents within a matter of, I think, three seconds after Magana had stepped away from the car so he could make the call or press the button unobserved. If he pressed such a button while he was still in the garage, that's okay, right? Correct. At least under the case law. And maybe if he just steps outside the door, right? Correct. Under Rivera or Diaz maybe. But since he basically summoned help right outside the garage in the car within a matter of a few seconds after when he was first able to, that strikes me, frankly, as pretty immediate. I know my time is done, but may I answer? You've told us safety is a red herring here, but I'm not convinced. Well, he went into his car and started driving. He didn't summon help like in any other cases that this court decided. Every single case that this court decided that affirmed the consent once removed, the CI or the agents were either inside or immediately outside. There's one case where the agent actually left, but came back, knocked on the door, and was re-invited in to get his coat and keys. This is a different situation. The CI said, I'm leaving. I'm leaving from this garage in order for the purpose of getting the money. Once he left, that consent, he could have come back and said, I forgot my keys here, but he didn't. He got into the car and he started driving away. That is, according to the case law in this district, he definitely left the garage. He had no intent of coming back. He had no intent of coming back with the agents, and there was absolutely no reason to aid or help that CI at the time. The agents could have simply secured, which they have done. They secured the garage, they secured the defendants, and they had a USA on the phone that could have gotten a warrant immediately. Thank you, Your Honor. Thank you, Mr. Pisetsky. Mr. Ness? Your Honors, may it please the court, counsel. My name is John Ness and I represent the United States. What does consent once removed mean? I've never seen that before. It's used in some of the cases in this area, Your Honor, as we believe a sort of shorthand to say that when an individual is invited in to a premises, and once that individual is in there and he or the defendant proudly displays contraband to that invited guest, then it's considered not violation of the Fourth Amendment for that government agent, undercover agent, CS, whatever you want to call it, to then summon law enforcement to make the arrest. It's called consent, but really what it goes to, Your Honor, we believe is, as the cases explain, is that a person who invites someone in, in that circumstance, has waived his Fourth Amendment protection or assumed risk. I don't understand. What's the logic of that? You invite in one person and you've invited in the whole world or what? No, Your Honor, but you do invite in the arresting agents because, as the Paul case explained from a number of years ago, that's where I drew the language of when you proudly display contraband, we're not going to use the Fourth Amendment. The court is not going to use the Fourth Amendment to say that there is some sort of warrant requirement or protection there because the person who invited the... He's bragging about the fact he's got it. Exactly, exactly. If the defendant calls someone in and says, let's do a dope deal, and that's the consent, the entry by consent, that's point number one of the Diaz case, prong number one. Two, at that point, it still establishes probable cause, and here there's no question, no dispute that probable cause was established. At that point, if they immediately summon help, there's no Fourth Amendment violation because a warrant is not required at that point. Wait a second. Why is immediacy? I don't understand that, but I thought what I heard you to say is that once probable cause is established, you don't need a warrant, which would be perfectly sensible, but is that what you're saying? No, Your Honor. The immediacy requirement, I think what that goes to is to ensure that this foundation of the doctrine, which is consent, clearly you have to have consent. But you certainly... But there's no consent to entry by police officers. That's exactly right, Your Honor. It's not explicit consent. It's not implicit either. I mean, if you're trying to sell drugs to someone, you don't have any consent for law enforcement people to come in. That's ridiculous. Your Honor, I agree that saying consent once removed is a bit of a... Why do judges say things like that, right? It's just nonsense. I think in this case, Your Honor, the district judge drew the consent once removed language from a Seventh Circuit opinion. Yeah, a bunch of them. I'm not trying to excuse us for using silly legal jargon. But I agree, Your Honor. It's not some sort of effective consent. But then when we forget about consent, I don't see why it should differ from any other case in which there's probable cause, but you're supposed to have a warrant to search a person's house or arrest someone in his house. What's different about this? The confidential agent can go outside and tell the cops, go call up and get a warrant. Right? That's true, Your Honor. What could be simpler? Well, I think when we look at the underpinnings of the doctrine, what the cases have said and what the reasoning is, is that when you have a situation where we have no doubt that at least one person was given consent to enter and then you have probable cause, what you have at that point is a diminished expectation of privacy, you the defendant. So at that point, if the agent, the government agent, when we have that open window of diminished expectation of privacy... Why is it a diminished expectation of privacy? It's like saying if your wife comes home and she forgot her key and she knocks on the door and you open the door and you let her in, now you have a diminished expectation of privacy and you expect all sorts of strangers to come barging in? What could that mean? Or if I invite you to a party, it means you get to bring along 10 friends, right? The doctrine... Let me run this one by you, Mr. Knauss. As I understand this doctrine, it has a very pragmatic foundation rooted in safety. Namely that when you've got... It started with an undercover agent, then expanded to CIs, but when they are in essence in closed private circumstances doing an undercover deal and they summon help, the officers can go in. Carry out the arrests and so on. Let me compare that situation to another one that we see very often. A CI goes to a stash house where drugs are being sold, is searched beforehand, goes in with the buy money, goes into the house, comes out and meets with the controllers down the block or around the corner, says, here are the drugs. Now, can they go in then without a warrant? I want to make sure I understand the facts of the hypothetical. So the person goes into the house, comes out, goes around the corner. Shows I've got the drugs. I think in that case it would be close, but I think that it would be supported under the doctrine, however... That can't be right, right? The law is clear cut in that situation that police have to go get a warrant under those circumstances, isn't it? Maybe I misunderstood your hypothetical, your honor. I think in that situation, yes, they would have to go get a warrant because you don't have the immediacy requirement. Okay, so what's the difference here? The CI here has left the closed private space and is he in danger anymore? Well, to answer the question about danger, the record didn't show any findings. That is critical because as Judge Hamilton pointed out, obviously if this person is in danger, he can summon the officers, obviously. But if he's not in danger, then it's hard to see the difference between this case and the second case that Judge Hamilton put. I see the difference, your honor, as this, which is, first of all, as the Diaz case recognized. In that situation, the CS had, or the undercover agent, had actually left the premises and came back. Why does that have any relevance to anything except safety? I think, your honor, that as I read the cases and as I read the doctrine, safety is a consideration, but it is not, in our view, the primary consideration of the rationale. Okay, what is the primary consideration? Again, it's this, whether you want to call it waiver or assumption of the risk of the reasonable expectation of privacy on the part of the defendant at that a much greater concern with privacy than an ordinary person because he's in a dangerous business and the police are after him. That would be, I'm sorry, that would be much more compelling, your honor, if the facts of this case were different. But as the district judge found after reviewing the tape, the CS left the garage. That overhead garage door was left open and the CS was a few yards away with the broker and made the call three seconds after the broker walked away. So the garage door was open. There was absolutely no concern for privacy on the part of the defendants in this case. They literally left the door open for the CS's return with the money and it's not true that they... But are you saying that if a person leaves a garage door open it shows he has no concern with privacy? Not as a bright line rule, judge, but under the fact... That's ridiculous. It is preposterous. Well, I think if you look at it as a factor in this case, when we look at all the circumstances of this case that were before the district judge, that was one element that showed that the defendants themselves expected the CS to come back immediately. They were going to bring the money back. Exactly. That's exactly right. They That's exactly right, your honor. And counsel's statement that they definitively left the premises is 100% at odds with the clear finding of the district judge, which is that the defendants expected this person to come back and that the CS immediately summoned help. Three seconds. So when we look at all of the factors as this doctrine has been developed by this court... He wasn't summoning help. You make that sound as if this is a safety issue. No, he's not He's turning over the arrest to the officers. That's all. That's correct, your honor. You're absolutely right. He was calling the arresting officers to come at that point. So for the reasons that I've stated, as well as the inevitable discovery doctrine issue that I didn't address, we respectfully ask that the judgment of the district court be affirmed. Thank you, your honor. Okay. Thank you. Thank you very much. This court would not have said on the third prong immediately summoned help if that's not what the in any scenario then. Any scenario as your honor put to the government would be exactly the same. Most cases where they send a CIN to do a control by, the agents are standing just down the street or right around the corner. So why would it prevent them from immediately going in there? Every time it would have happened that the agents would go in within a minute or two. Would never fail and we will never need the fourth amendment or the warrant requirement. And for the last argument that counsel made regarding that my client Well, this is a little different than garage door. And they're in, they leave the garage door open, they can't go out, come back in. Well, it's not necessarily the same. It was an issue. I mean, you got to be some somewhat practical for these things to get go and get a warrant when the thing is right there, the agents are there, the informants right there. He walks out and they come right back in. Well, he didn't just walk out. He got into his car and started driving away. And he wasn't standing right outside. He could have said, I'm going to make a phone call from inside the garage. He didn't do so. And in fact, what he told the people in the garage is that he's going to want me to bring a small satchel back. And he said, he not meaning anybody in this room. He said, he meaning we had evidence in this case that he had the money people. And he specifically told them that he meaning one of his money people were going to want me to bring a satchel back so they can put the money in and I can bring it back to you. So he gave an indication to the people there that he's going somewhere else. He didn't indicate to the people, I'm going to my car. He never said I'm going to my car to get it. Thank you, Your Honors. Okay, thank you very much, Mr. Seskin. Were you were you appointed? Well, we thank you for your opportunity to testify. And of course, we also thank Mr. Knauss.